UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KHECHUMYAN SMBAT,<br><br>           Petitioner,<br><br>      v.<br><br>ICE FIELD OFFICE DIRECTOR, et. al,<br><br>           Respondents. | CASE NO. 2:26-cv-00818-JHC<br><br>ORDER |

## I

### INTRODUCTION

This matter comes before the Court on Khechumyan Smbat's Petition for Writ of Habeas Corpus.  Dkt. # 4; *see also* Dkt. # 14.  The Court has reviewed the materials filed in support of and in opposition to the Petition, the rest of the record, and the governing law.  Being fully advised, for the reasons below, the Court GRANTS the Petition.  Dkt. # 4.

## II

### BACKGROUND

Petitioner is a native and citizen of Armenia.  Dkt. # 8 at 1.  Petitioner entered the United States on March 25, 2015, using documentation not legally issued to him, and was immediately

ORDER - 1

detained and, shortly after, found inadmissible.  Dkt. # 8 at 1-2.  Petitioner sought relief from removal and was released on parole on May 29, 2015, while his claims proceeded.  Dkt. # 8 at 2.

On October 1, 2020, an immigration judge (IJ) ordered Petitioner removed, but Petitioner appealed that decision to the Board of Immigration Appeals (BIA) and that appeal remains pending.  Dkt. # 8 at 2.

On July 12, 2022, Petitioner pleaded guilty to conspiracy to commit bank fraud and aggravated identify theft in the Central District of California, and was sentenced to 48 months in prison and ordered to pay over $950,000 in restitution.  Dkt. # 8 at 2.  On October 10, 2024, Petitioner was transferred from the Bureau of Prisons to Immigration and Customs Enforcement (ICE), who then transferred him to the Northwest ICE Processing Center (NWIPC) in Tacoma, Washington.  Dkt. # 8 at 2.

On October 23, 2024, Petitioner, through counsel, filed a Motion to Reopen with the BIA.  Dkt. # 8 at 3.  This motion remains pending.  *Id.*  On December 8, 2025, Petitioner, moving pro se, filed a Motion to Withdraw Appeal with the BIA, but this motion was rejected three months later because it was not submitted by Petitioner's attorney of record.[1]  Dkt. # 9-9.

Petitioner does not have a final removal order.  Dkt. # 8 at 2.  Still, on February 15, 2026, ICE obtained travel documents to remove Petitioner to Armenia.  *Id*.

### III

#### DISCUSSION

Federal district courts have the authority to grant a writ of habeas corpus if a person "is in custody in violation of the Constitution or laws or treaties of the United States[.]"  28 U.S.C. §

---

[1] The Government says this motion was not filed until January 8, 2026, but in both Petitioner's submitted record and the Government's, it is dated as submitted on December 8, 2025.  *See* Dkt. # 4 at 13; Dkt. # 8 at 3; Dkt. # 9-9.

ORDER - 2

2241 (a), (c). "The [habeas] petitioner carries the burden of proving by a preponderance of the evidence that [they are] entitled to habeas relief." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

A.      Scope of Habeas Petition

Respondents raise concerns over the ambiguity of the pro se petition.[2] Dkt. # 7 at 4. But "[c]ourts in this circuit have an obligation to give a liberal construction to the filings of pro se litigants, especially when they are civil rights claims by [incarcerated persons]." *Blaisdell v. Frappiea*, 729 F.3d 1237, 1241 (9th Cir. 2013) (citation omitted). Petitioner "challenges the legality of detention because: [he has] been incarcerated for 19 months." Dkt. # at 14 at 2; *see also* Dkt. # 4 at 1. He asks for relief because he is "in a situation where [he] can not [sic] be removed and for whatever reason can not [sic] be released."[3] *Id.*

Based on the Petition, Respondents managed to identify and respond to the key issue raised by Petitioner: that his detention has become unconstitutionally prolonged.[4] Dkt. # 7 at 4; *see generally* Dkt. # 3. Thus, the Court liberally construes Petitioner's claim as one arguing that his detention has become unreasonably prolonged in violation of due process.[5] *See Mateo Lopez v. Warden, Nw. ICE Processing Ctr.*, 2026 WL 1328548, at *2 (W.D. Wash. May 13, 2026)

---

[2] Respondents also say the Petition should be dismissed for lack of jurisdiction. Dkt. # 7 at 2. This jurisdictional issue has been resolved by the amended petition. *See* Dkt. # 14 (naming NWIPC warden, Bruce Scott as a second Respondent).

[3] Petitioner also alleges facts that might invoke procedural Due Process concerns. *See* Dkt. # 14. But because the analysis under *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976), was not briefed by either party and because Petitioner is entitled to habeas relief based on his prolonged detention, the Court need not consider the question here.

[4] The Court cites Petitioner's First Amended Petition, but the same facts were also stated in the original Petition. Dkt. # 4 at 1. Additionally, the Court provided Respondents additional time to respond to the Amended Petition, which they declined to do, instead choosing to incorporate their previous response. *See* Dkt. # 15.

[5] Respondents also identified an issue raised by Petitioner regarding the statutory authority of his detention. *See* Dkt. # 7 at 4. The Court need not fully address this question because it agrees with Respondents that because of Petitioner's criminal conviction he is detained pursuant to 8 U.S.C. § 1226(c). *See* Dkt. # 7 at 4-5.

ORDER - 3

(liberally construing non-citizen's argument "that his continued detention is unlawful" based on the length of detention as one arguing that his detention has become so unreasonably prolonged that the Constitution requires a bond hearing); *Martinez v. ICE Field Off. Dir.*, 2026 WL 1506123, at *2 (W.D. Wash. May 29, 2026) (same).[6]

B.      Prolonged Detention

In *Demore v. Kim*, 538 U.S. 510 (2003), the Supreme Court rejected a due process challenge to the no-bail provision of § 1226(c).  In so holding, the Supreme Court stressed the "brief" nature of mandatory detention under § 1226(c) that, in the vast majority of cases, resulted in detention of less than about five months.  *Id*. at 513, 529-30.  Justice Kennedy's concurring opinion, which stated the majority position, reasoned that under the Due Process Clause, a noncitizen could be entitled to "an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified."  *Id*. at 532.

Since *Demore*, courts have found that a noncitizen's detention, even if mandatory under 8 U.S.C. § 1226(c), can still be unlawful if it is unreasonably prolonged under the Due Process Clause.  *See Martinez v. Clark*, 2019 WL 5968089, at *6–7 (W.D. Wash. May 23, 2019), *report and recommendation adopted*, 2019 WL 5962685 (W.D. Wash. Nov. 13, 2019) (affirming that prolonged detention under § 1226(c) can give rise to due process violations) (collecting cases); *Amhirra v. Warden, Nw. Det. Ctr.*, 2025 WL 3718994, at *5 (W.D. Wash. Dec. 23, 2025) (same); *see also Rodriguez v. Marin*, 909 F.3d 252, 256 (9th Cir. 2018) (expressing "grave doubts that any statute that allows for arbitrary prolonged detention without any process is

---

[6] In both *Mateo* and *Martinez v. ICE Filed Off. Dir.* the moving non-citizen was detained under 8 U.S.C. § 1225(b)(2).  Prolonged detention under that statute, is considered under the *Banda* test rather than the *Martinez* test that applies here.  *See Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1106 (W.D. Wash. 2019).

ORDER - 4

constitutional or that those who founded our democracy precisely to protect against the government's arbitrary deprivation of liberty would have thought so").

In this District, courts have applied the test in *Martinez*, 2019 WL 5968089, at *6-7. Under that test, the Court considers the following factors:

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) whether the detention will exceed the time the petitioner spent in prison for the crime that made him [or her] removable; (4) the nature of the crimes the petitioner committed; (5) the conditions of detention; (6) delays in the removal proceedings caused by the petitioner; (7) delays in the removal proceedings caused by the government; and (8) the likelihood that the removal proceedings will result in a final order of removal.

*Id.* at *9 (citing, *inter alia, Cabral v. Decker*, 331 F. Supp. 3d 255, 261 (S.D.N.Y. 2018)).  The Court applies the *Martinez* test here.

1.      Length of detention

The length of detention is the "most important factor."  *See Martinez*, 2019 WL 5968089, at *9.  "Under this factor, the longer mandatory detention continues under 8 U.S.C. § 1226(c) beyond the 'brief' period authorized in *Demore*, the harder it becomes to justify without conducting an individualized bond hearing."  *Sarr v. Scott*, 765 F. Supp. 3d 1091, 1098 (W.D. Wash. 2025) (adopting report and recommendation).

Petitioner has been detained for over 20 months.  Dkt. # 8 at 2.  This factor significantly favors Petitioner.  *See* Dkt. # 7 at 7 (Respondents conceding this factor); *see also Sarr*, 765 F. Supp. 3d at 1098 (finding 21-month detention to be "significantly beyond the 'brief' period presumed reasonable in *Demore*"); *Martinez*, 2019 WL 5968089, at *9 (finding nearly 13-month detention weighed in favor of granting a bond hearing); *Juarez v. Wolf*, 2021 WL 2323436 (W.D. Wash. May 5, 2021), *report and recommendation adopted*, 2021 WL 2322823 (W.D. Wash. June 7, 2021) (finding detention of 14 months weighed in favor of granting a bond hearing).

ORDER - 5

2.      Likely duration of future detention

The Court next "considers how long the detention is likely to continue absent judicial intervention; in other words, the anticipated duration of all removal proceedings including administrative and judicial appeals." *Martinez*, 2019 WL 5968089, at *9.  Although speculative, Petitioner's removal proceedings could take years to resolve.  He currently has an appeal before the BIA; if remanded, Petitioner's proceedings continue before an IJ.  If the BIA rejects his appeal, Petitioner may appeal to the Ninth Circuit.  *See Juarez*, 2021 WL 2323436, at *5 (estimating 2 years or more at the outset of a Ninth Circuit appeal).  But that assumes Petitioner will continue to pursue his appeal, and that might not be the case as Petitioner has recently requested that his BIA appeal be dismissed and acknowledged that this would lift his stay of removal.  Dkt. # 9-9.  Under these facts, the Court finds this factor to be neutral.

3.      Criminal history

Under the third and fourth factors, the Court reviews the length of civil detention compared to Petitioner's criminal sentence, and the nature of his crime.  These factors "are suggestive of whether the detainee is a danger to the community or a risk of flight such that a bond hearing would be futile." *Juarez*, 2021 WL 2323436, at *5 (citing *Cabral*, 331 F. Supp. 3d at 262).

Petitioner was sentenced to 48 months in prison for conspiracy to commit bank fraud and aggravated identity theft.  Dkt. # 9-5.  Given that Petitioner has been detained by ICE for over 20 months it is possible his detention will match or exceed the length of time he spent in prison.  *See Juarez*, 2021 WL 2323436, at *5 (finding it possible Petitioner's 13 months of detention may

ORDER - 6

exceed his 34-months time served). Still, Petitioner has been convicted of a serious felony, and thus, this factor leans in the Government's favor.[7] *See Juarez*, 2021 WL 2323436, at *5-6.

### 4. Conditions of detention

"The more that the conditions under which the [non-citizen] is being held resemble penal confinement, the stronger [the] argument that he is entitled to a bond hearing." *Juarez*, 2021 WL 2323436, at *6. Petitioner has provided no facts as to the conditions of his detention. *See generally* Dkt. ## 4, 14. Still, "[o]ther courts within this district have characterized the conditions in NWIPC as that of a prison, including problems with food, medical neglect, and cleanliness." *Shevchuk v. Scott*, 2026 WL 1413609, at *2 (W.D. Wash. May 20, 2026); *see also Hossain v. Scott*, 2026 WL 1533003, at *6 (W.D. Wash. June 1, 2026) (collecting cases on NWIPC conditions). The Court thus finds this to be a neutral factor.

### 5. Delays in removal proceedings

Under the sixth and seventh factors, the Court considers "the nature and extent of any delays in the removal proceedings caused by petitioner and the government, respectively." *Martinez*, 2019 WL 5968089, at *10. "Petitioner is entitled to raise legitimate defenses to removal ... and such challenges to his removal cannot undermine his claim that detention has become unreasonable." *Juarez*, 2021 WL 2323436, at *6 (quoting *Liban M.J. v. Sec'y of Dep't of Homeland Sec.*, 367 F. Supp. 3d 959, 963-64 (D. Minn. 2019)).

There is no evidence that Petitioner has delayed his removal proceedings beyond raising legitimate defenses he is entitled to. *See generally* Dkt. ## 8, 9. Meanwhile, the Government has allowed for Petitioner's removal proceedings to take over a decade. When Petitioner entered the U.S. on March 25, 2015, he was placed in expedited removal proceedings under 8 U.S.C. §

---

[7] Given the record before it, *See* Dkt. # 9, the Court declines to make a finding on the futility of a bond hearing.

ORDER - 7

1225(b)(1); but because Petitioner claimed fear of returning to Armenia, he received a credible fear interview. Dkt. # 8 at 1-2. After that, it took five years for an IJ to deny Petitioner's relief from removal and order him removed to Armenia. *Id.* On October 26, 2020, Petitioner timely appealed the IJ's order and that appeal remains pending almost six years later. *Id.* Once detained, it was Petitioner who has attempted to keep his removal proceedings moving. Although the BIA appeal remained pending, Petitioner, through counsel, filed a Motion to Reopen with the BIA on October 23, 2024. *Id.* Nothing in the record suggests that the BIA has taken any action. *See generally* Docket; *see also* Dkt. # 14. Again, after being detained for over a year, it was once again Petitioner who tried to keep his removal proceedings going by filing a Motion to Withdraw Appeal with the BIA on December 8, 2025. Dkt. # 9-9; *see also* Dkt. # 14. The Government took three months to deny the motion based on Petitioner's failure to file through counsel, and that denial occurred only after Petitioner filed the instant Petition. *See* Dkt. # 8 at 2-3; Dkt. # 1. The sixth and seventh factors thus weigh in Petitioner's favor. *See Juarez*, 2021 WL 2323436, at *7 (finding the sixth and seventh factor weighing in non-citizen's favor where, although not intentional, the BIA caused a three-year delay in resolving Petitioner's appeal).

6.      Likelihood of final order of removal

Finally, the Court considers the likelihood that the removal proceedings will result in a final order of removal. *See Martinez*, 2019 WL 5968089, at *10 ("In other words, the Court considers whether the noncitizen has asserted any defenses to removal."). "[W]here a noncitizen has asserted a good faith challenge to removal, 'the categorical nature of the detention will become increasingly unreasonable.'" *Id.* (quoting *Reid v. Donelan*, 819 F.3d 486, 500 (1st Cir. 2016)).

ORDER - 8

The Government has made this factor difficult to determine by redacting almost the entirety of the IJ's removal order. *See* Dkt. # 9-4. But from what the Court can determine, Petitioner has asserted a good faith challenge to removal in the form of an asylum claim and a claim for related relief. *See* Dkt. # 9-4. Yet, Petitioner, after being detained for 14 months, sought to withdraw his appeal. Dkt. # 9-9. And while this indicates that removal may be more likely, the Government rejected that filing and, to the Court's knowledge, Petitioner has not renewed it. Dkt. # 8 at 2. The Court thus finds this factor neutral as the Court cannot determine the likelihood of removal.

### 7.   Weighing the Factors

As discussed above, three of the eight factors are neutral, two factors weigh in the Government's favor, and three factors, including the "most important factor," weigh in Petitioner's favor. The Court thus concludes that Petitioner's prolonged mandatory detention without a bond hearing has become unreasonable and therefore violates due process.

### C.   Remedy

Having determined that Petitioner's detention violates his constitutional right to due process, the Court finds Petitioner's continued detention to be unlawful and grants the habeas petition. Other courts applying *Martinez* have concluded that the proper remedy in such cases is to order a bond hearing. *See Juarez*, 2021 WL 2323436, at *8 (collecting cases). This Court does the same.

The bond hearing shall comport with procedural requirements as described by the Ninth Circuit. *See Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011); *see also Tavurov v. Noem*, 819 F. Supp. 3d 1209, 1228 (W.D. Wash. 2026) (after applying *Martinez* factors, ordering bond hearing adhering to *Singh v. Holder*). These requirements include "a contemporaneous record of the

ORDER - 9

hearing" in which "the Government bears the burden of proving by clear and convincing evidence that petitioner is a flight risk or danger to the community." *Id.*

## IV

### CONCLUSION

For these reasons, the Court GRANTS the habeas petition. Dkt. ## 4, 14. The Court further ORDERS:

1. Respondents must provide Petitioner with a bond hearing within 14 calendar days of this order. This bond hearing shall comply with the procedural requirements of *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011)—there must be a contemporaneous record of the hearing, and the government bears the burden of proving by clear and convincing evidence that petitioner is a flight risk or danger to the community;

2. Alternatively, or if the bond hearing does not occur within 14 calendar days of the order, Respondents shall immediately release petitioner under appropriate conditions of release.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 26th day of June, 2026.

John H. Chun
United States District Judge

ORDER - 10